Corey A. Evans (CSB# 218789)
cevans@evansandpage.com
Geneva Page (CSB# 235633)
gpage@evansandpage.com
Robert Stamps (CSB# 254732)
rstamps@evansandpage.com
EVANS & PAGE
2912 Diamond Street #346
San Francisco CA 94131
ph:  (415) 896-5072
fax: (415) 358-5855

Attorneys for Plaintiffs
Gail Profant and Leslie Hemstreet

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAIL PROFANT, an individual; and LESLIE HEMSTREET, an individual, | CASE NO.:  2:11-cv-05339-RGK-OP |
| Plaintiffs, | **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [Dkt. 9]** |
| v. | Date:    October 24, 2011 |
| HAVE TRUNK WILL TRAVEL, INC., a corporation; GARY JOHNSON, an individual; KARI JOHNSON, an individual; and DOES 1-10, | Time:    9:00 a.m. Judge:   U.S. DISTRICT JUDGE             R. GARY KLAUSNER |
| Defendants. | |

/
/
/
/
/
/
/
/
/
/

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.   INTRODUCTION ...................................................................... 1

II.  FACTUAL BACKGROUND ...................................................... 1

III. JUDICIAL STANDARD .......................................................... 4

IV.  DISCUSSION         ...................................................................... 5

     A.   Defendants Violated Local Rule 7-3 ................................... 5

     B.   Plaintiffs Seek Leave to Amend If Any Aspect of the Complaint is
          Deficient         ....................................................................... 6

     C.   Facts Improperly Presented  ............................................... 7

     D.   Plaintiffs' Claims Are Properly Pled Because: (1) Plaintiffs Suffered
          Personal Economic Loss, and (2) Plaintiffs Need Not Plead "Direct
          Business Dealings" With Defendants ................................... 8

          1.   Plaintiffs Suffered Personal Economic Loss ............................. 8

          2.   Direct Business Dealings Are Not Required and Restitution is
               Permitted ................................................................. 10

               a.   The UCL Does Not Require Direct Business ............... 10

               b.   Plaintiffs Are Entitled to Restitution ........................... 12

          3.   The False Advertising Claim Is Pled Sufficiently.................... 13

     E.   Plaintiffs are Entitled to Their Claims for Relief ............................ 14

          1.   Plaintiffs Face Future Harm Warranting Injunctive Relief .... 14

          2.   Plaintiffs Gave Fair Notice of Declaratory Relief .................. 16

F.   Plaintiffs' Complaint Meets the Requirements of
Fed. R. Civ. P. 9(b) ........................................................................ 18

    1.   Plaintiffs Plead the Who, What, When, Where, and How of the .
         Fraudulent Conduct ............................................................... 18

    2.   Plaintiffs Plead Reliance on Defendants Statements............... 19

V.   CONCLUSION   ...................................................................... 20

CERTIFICATE OF SERVICE CM/ECF.............................................. 21

# TABLE OF AUTHORITIES

## I.   <u>FEDERAL CASES</u>

*Alcatel-Lucent USA, Inc. v. Dugdale Commc'n, Inc.*
  No. 09-2140, 2009 WL 3346784 (C.D. Cal. Oct. 13, 2009) ........................ 5

*Allergan, Inc. v. Athena Cosmetics, Inc.*
  640 F.3d 1377 (Fed. Cir. 2011) ...........................................................10, 11

*Arpin v. Santa Clara Valley Transp. Agency*
  261 F.3d 912 (9th Cir. 2001) .................................................................. 7

*Ashcroft v. Iqbal*
  -- U.S. --, 129 S.Ct. 1937 (2009) ............................................................. 5

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................ 5

*Cahill v. Liberty Mut. Ins. Co.*
  80 F.3d 336 (9th Cir. 1996) ................................................................... 4

*Degelmann v. Advanced Med. Optics, Inc.*
  -- F.3d ---, 2011 WL 4470641 (9th Cir. Sept. 28, 2011) .........................9, 11

*Deutsche Int'l 1 LLC v. El Trade Int'l*
  No. 03-1663, 2006 WL 6106246 (C.D. Cal. Jan. 4, 2006)........................... 6

*Figueroa v. Gates*
  No. 00-4158, 2002 WL 31572968 (C.D. Cal. Nov. 15, 2002) ...................... 6

*Foman v. Davis*
  371 U.S. 178 (1962) ............................................................................ 7

*Gest v. Bradbury*
  443 F.3d 1177 (9th Cir. 2006) ................................................................ 16

*Halicki v. Carroll Shelby Int'l, Inc.*
  No. 04-8813, 2005 WL 5253338 (C.D. Cal. Nov. 14, 2005) ....................... 6

*In re Ditropan XL Antitrust Litig.*
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................................................... 18

*John-Charles v. California*
  -- F.3d --, 2011 WL 2937945 (9th Cir. July 22, 2011)..........................13, 19

*Khademi v. S. Orange County Cmty. Coll. Dist.*
  194 F. Supp. 2d 1011, (C.D. Cal. 2002) ................................................. 17

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*
  No. C 09–03529 JSW, 2011 WL 1152568 (N.D. Cal. Mar. 28, 2011)........ 20

*Martinez–Serrano v. INS*
  94 F.3d 1256 (9th Cir. 1996) .............................................................13, 19

*McKenzie v. Fed. Exp. Corp.*
    765 F. Supp. 2d 1222 (C.D. Cal. 2011) ...................................... 9

*McKinniss v. Sunny Delight Beverages Co.*
    No. CV 07-02034-RGK (JCx), 2007 WL 4766525
    (C.D. Cal. Sept. 4, 2007)................................................................ 7

*Mir v. Fosburg*
    646 F.2d 342 (9th Cir. 1980) ........................................................ 7

*Morris v. Ocwen Loan Servicing LLC*
    No. CV 11–00835–RGK (DTBx), 2011 WL 2729190
    (C.D. Cal. July 8, 2011) ...............................................................4, 7

*Peviani v. Natural Balance, Inc.*
    774 F. Supp. 2d 1066 (S.D. Cal. 2011) .................................18, 19

*Rimes v. Noteware Dev. LLC*
    No. C-09-0281 EMC, 2010 WL 1644693 (N.D. Cal. Apr. 21, 2010) ....13, 19

*Russell v. Landrieu*
    621 F.2d 1037(9th Cir. 1980) ....................................................... 5

*S.E.C. v. Leslie*
    No. C 07–3444, 2008 WL 3876169 (N.D. Cal.  Aug. 19, 2008)................... 9

*Superbalife, Int'l v. Powerpay*
    No. CV 08-5099, 2008 WL 4559752 (C.D. Cal. Oct. 7, 2008).................... 5

*The 1849 Condos. Ass'n, Inc. v. Bruner*
    No. 2:09-cv-03339-JAM-EFB, 2010 WL 2557711
    (E.D. Cal. June 21, 2010) ............................................................ 17

*United States v. Robel*
    389 U.S. 258 (1967)  .................................................................. 8

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) .................................................... 18

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*
    No. 2:09-cv-02067-MCE-GGH, 2010 WL 1611398
    (E.D. Cal. Apr. 20, 2010) .........................................11, 13, 14

*Walker v. Geico Gen. Ins. Co.*
    558 F.3d 1025 (9th Cir. 2009)  .................................................... 9

*Williams v. Eastside Lumberyard & Supply Co.*
    190 F. Supp. 2d 1104 (S.D. Ill. 2001) ........................................ 17

*ZL Technologies, Inc. v. Gartner, Inc.*
    No. CV 09-02393 JF (RS), 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009)... 11

*Zopatti v. Rancho Dorado Homeowners Ass'n*
    No. 10CV1091 DMS (WVG), 2010 WL 5174534
    (S.D. Cal. Dec. 15, 2010) ............................................................ 17

EVANS & PAGE
SAN FRANCISCO

II.      CALIFORNIA CASES

*Bank of the West v. Super. Ct.*
         2 Cal.4th 1254 (1992) .......................................................... 17

*Clayworth v. Pfizer, Inc.*
         49 Cal.4th 758 (2010) ..................................... 9, 10, 11, 12, 13

*Hall v. Time Inc.*
         158 Cal.App.4th 847 (2008) ................................................ 11

*In re Tobacco II Cases*
         46 Cal.4th 298 (2009) ........................................................ 19

*Kwikset Corp. v. Super. Ct.*
         51 Cal.4th 310 (2011) ..............................................9, 10, 11

*Overstock.com, Inc. v. Gradient Analytics, Inc.*
         151 Cal.App.4th 688 (2007) ............................................... 10

*People v. Lynam*
         253 Cal.App.2d 959 (1967) ................................................ 14

*Shersher v. Super. Ct.*
         154 Cal.App.4th 1491 (2007) .........................................10, 11

*Troyk v. Farmers Group, Inc.*
         171 Cal.App.4th 1305 (2009) ............................................. 12

III.     FEDERAL RULES

Fed. R. Civ. P. 9(b)............................................................... 18

Fed. R. Civ. P. 12(b)(6) ...................................................*passim*

Fed. R. Civ. P. 15(a) ............................................................. 7

IV.      CALIFORNIA STATUTES

Cal. Bus. & Prof. Code § 17200 ......................................*passim*

Cal. Bus. & Prof. Code § 17203 ............................................ 13

Cal. Bus. & Prof. Code § 17204 .....................................9, 10, 12

Cal. Bus. & Prof. Code § 17500

California Penal Code § 596.5 ................................................ 3

V.       OTHER AUTHORITY

Cal. Prop. 64 .........................................................10, 11

Local Rule 7-3.................................................................... 5

# I.     INTRODUCTION

Defendants Have Trunk Will Travel, Inc. ("HTWT"), Gary Johnson, and Kari Johnson (collectively "defendants") have extolled their humane elephant training methods and convinced the public to ride, rent, and watch (on TV and in movies) elephants that have secretly been abused and tortured at defendants' compound in California.  It is fundamentally deceptive of defendants to tell the public that elephants are trained humanely for the purpose of encouraging the public to patronize elephant-centered entertainment (movies, television and elephant rides) while secretly beating the elephants and electrically shocking them – all for defendants' financial gain.

Plaintiffs Gail Profant and Leslie Hemstreet (collectively "plaintiffs") oppose defendants' motion to dismiss.  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code sections 17200 *et seq.*, protects competitors and consumers from illegal, fraudulent, and unfair business practices, and Section 17500 prohibits false advertising ("FAL").  Defendants seek to dismiss plaintiffs' entire complaint with prejudice because plaintiffs' claims are allegedly prohibited under the UCL and FAL as a matter of law.  Defendants additionally seek dismissal of the remedies plaintiffs pled, and assert that plaintiffs' claims are not pled with particularity as required under Fed. R. Civ. P. 9(b).  Defendants are wrong.  For the purpose of this motion, this Court must assume that defendants abused an elephant in violation of California law, and that defendants knowingly lied to the public about the abuse prior to the movie's release, for the purpose of gaining future movie contracts.  In short, plaintiffs pled sufficient facts to maintain their claims.

# II.     FACTUAL BACKGROUND

Kari and Gary Johnson are the owners of HTWT.  Compl. ¶ 12.  Defendants control seven Asian elephants, which are listed as an endangered species.  *Id.* ¶¶ 13-14. Defendants receive substantial income and profits by training and renting elephants for movies such as *Water for Elephants*.  *Id.* ¶ 16.  Defendants' profits are dependent upon the public's perception that the elephants are humanely treated and not abused, since

the public would not pay money to watch movies featuring beaten and electrically-shocked elephants. *Id.* ¶¶ 19-20.  Defendants are the number one provider of Asian elephants for the entertainment industry. *Id.* ¶ 17.

Defendants' elephant, Tai, starred in the movie *Water for Elephants*, which emphasizes the sadness and horror of early-twentieth century circus abuse of elephants, for the alleged purpose of "training." *Id.* ¶ 26.  In order to sell the concept of the movie to the public, defendants repeatedly assured the public that Tai was trained humanely with kindness, marshmallows, and positive reinforcement. *Id.* Defendants were paid money to have Tai "act" as an abused elephant in the movie. *Id.* ¶ 28. Ironically, the real (and sad) lesson from *Water for Elephants* is that entertaining elephants *still* are abused, since Tai is a horribly abused elephant playing the role of an abused elephant. *Id.* ¶¶ 26, 66, at p. 2.

Plaintiffs conducted research to determine whether the elephants in the movie *Water for Elephants* were humanely treated and not abused before seeing the movie. *Id.* ¶¶ 3-4.  Plaintiffs decided that if defendants (as the elephant's trainers) engaged in abusive treatment toward the elephants, then they would not see the movie, but if the elephant was trained humanely, they would see the movie. *Id.*  Prior to watching the movie, plaintiffs read statements from defendants, declaring that the elephant in the movie was humanely treated, never mistreated, and never trained with electric shock devices or bull hooks.[1]  *Id.*; *see id* ¶ 31 (HTWT's website declaring a "high standard of care and humane treatment"); *id.* ¶ 32 (Gary Johnson declaring "Tai was never hit in any way at all."); *id.* ¶ 34 (Kari Johnson publicly stating that when Tai was on the set for the movie, he received the same treatment as he did at the HTWT compound); *id.* ¶ 75(a) (Kari Johnson declaring that defendants built a "good reputation" based on the

---

[1]     HTWT is a member of the American Zoo and Aquarium Association ("AZA"), which prohibits electrical devices and  electric prods and shocks to train elephants. Compl. ¶¶ 41-42.  Defendants hold themselves out to the public that they are AZA certified, and thereby convey to the public that they follow AZA's rules. *Id.* ¶ 42.

"special care" given to the elephants); *id*. ¶ 75(b) (Kari Johnson championing that HTWT does not condone using electrical devices to discipline and control elephants); *id*. ¶ 70 (defendants representing that they trained Tai with jelly beans, carrots, and that Tai never knew mistreatment); *id*. ¶ 71 (defendants representing that Tai's training for the movie was similar to the training Tai received at HTWT's ranch); *see also id*. ¶¶ 84-85 (providing additional misleading statements).  Plaintiffs saw defendants' misrepresentations on HTWT's website, in the news, on the Internet, and in movies that touted the safe treatment of their elephants.  *Id*. ¶ 77.  Plaintiffs relied on defendants' representations about safe elephant treatment when purchasing their movie tickets.  *Id*. ¶ 67.  Defendants' conduct was a substantial and primary factor in influencing plaintiffs' decision.  *Id*. ¶ 72.

On May 7 and May 21, 2011, video surfaced showing defendants beating and using electric shock training on Tai, and subjecting other elephants to abuse.  *Id*. ¶ 21. Prior to the movie's release, and prior to the release of the videos documenting defendants abuse, defendants repeatedly told the public that Tai and other elephants were treated humanely and never abused; however, the video reveals otherwise: (1) elephants are repeatedly given electric shocks with handheld stun guns (which is illegal under California animal cruelty laws)[2]; (2) elephants are beaten, jabbed, and hit about the body and legs with bull hooks;[3] (3) a baby elephant is hooked in the lip and cries out; (4) an elephant is pinned with bull hooks while her tusks are sawn down close to the bone; (5) a baby elephant is hit over the head and dragged by the trunk; (6) elephants chained by the legs are barely able to move for twelve hours a day; and (7) Tai cries out when being shocked into performing a headstand.  *Id*. ¶¶ 22-23.  Contrary

---

[2]      California Penal Code § 596.5 states: "It shall be a misdemeanor for any owner or manager of an elephant to engage in abusive behavior towards the elephant, which behavior shall include the discipline of the elephant by any of the following methods: . . . (b) Use of electricity."
[3]      The American Veterinary Medical Association condemns the use of bull hooks to strike or inflict harm upon an elephant.  *Id*. ¶ 37.

1   to defendants' "sales pitch" to the public of humane treatment, Kari Johnson is seen in

2   the video viciously striking an elephant while Gary Johnson is seen giving elephants

3   electric shocks.[4] *Id.* ¶¶ 23-24.

4       Defendants publicly attacked the veracity of the video depicting defendants

5   abusing elephants.  *Id.* ¶¶ 43-46.  Specifically, defendants stated that: (1) the video was

6   heavily edited and taken out of context with short snippets taken surreptitiously; and

7   (2) the video was an inaccurate portrayal of their elephant training practices.  *Id.*

8    After watching the movie, plaintiffs watched ADI's videos showing defendants

9   torturing the elephants with bull hooks and electric shock devices.  *Id.*  Defendants

10  intentionally misled plaintiffs and the public with false statements and unfair business

11  practices.  *Id.*  ¶¶ 3-4.  Plaintiffs would not have supported/subsidized defendants'

12  abuse by paying to see the movie if plaintiffs were told the truth by defendants.  *Id.* ¶¶

13  54, 64, 66.  Defendants' false claims of humane treatment duped plaintiffs and the

14  movie ticket buying public.  *Id.* ¶ 25.

15      As a result, on June 27, 2011, plaintiffs filed their complaint alleging

16  defendants engaged in, and continue to engage in, unfair business practices and false

17  advertising.  The parties later filed a joint stipulation to extend defendants' time to

18  respond.  On September 15, 2011, defendants filed their motion to dismiss.

19  ### III.   JUDICIAL STANDARD

20      "A party may move to dismiss for failure to state a claim upon which relief can

21  be granted."  *Morris v. Ocwen Loan Servicing LLC*, No. CV 11–00835–RGK (DTBx),

22  2011 WL 2729190, at *1 (C.D. Cal. July 8, 2011) (citing Fed. R. Civ. P. 12(b)(6)).  "In

23  deciding a 12(b)(6) motion, the Court must assume that allegations in the challenged

24  complaint are true, and construe the complaint in the light most favorable to the non-

25  moving party."  *Id.* (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th

26

27  [4]      A veterinarian, who has witnessed and treated the wounds of elephants abused

28  by severe training techniques, declared that nothing he has seen can rival the cruelty
    he witnessed in the videos from HTWT.  *Id.* ¶ 35(a).

Cir. 1996)).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The court may not dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).

## IV.   DISCUSSION

A.    <u>Defendants Did Not Comply With Local Rule 7-3</u>

Courts in this district routinely deny motions where parties fail to comply with Local Rule 7-3, which provides that the parties are to meet and confer before filing a motion.  *See* L.R. 7-3 ("[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss *thoroughly* . . . the substance of the contemplated motion and any potential resolution." (emphasis added)).  Courts in this district are particularly strict with a party's attempt to comply with the rule by making half-hearted efforts to confer before filing a motion.  *See Alcatel-Lucent USA, Inc. v. Dugdale Commc'n, Inc.*, No. 09-2140, 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009).  In *Superbalife, Int'l v. Powerpay*, No. CV 08-5099, 2008 WL 4559752, at *2 (C.D. Cal. Oct. 7, 2008), the court was unwilling to excuse noncompliance with the Local Rules because a party did not meet and confer in good faith.  Counsel's failure to confer was inexcusable, and as a result, denied the motion to dismiss.  *Id.*

Defendants never met and conferred *thoroughly* as L.R. 7-3 requires.  When counsel for all parties discussed the filing of this motion, defendants never raised the prospect that they were challenging the complaint pursuant to Fed. R. Civ. P. 9(b), or for deficiencies to plaintiffs' claim for declaratory relief.  Evans Decl. ¶ 3.  If they had, plaintiffs would have simply amended to avoid motion practice before this Court.  The

1  meet and confer requirements of L.R. 7-3 are in place for a reason, and the Court

2  should warn defendants that nothing short of strict compliance with the local rules will

3  be expected in this Court.[5]

4        Because defendants failed to make a good faith attempt to meet and confer and

5  discuss the Rule 9(b) and declaratory relief issues before improvidently filing the

6  instant motion, they should be denied.  *See Deutsche Int'l 1 LLC v. El Trade Int'l*, No.

7  03-1663, 2006 WL 6106246, at *1 (C.D. Cal. Jan. 4, 2006) ("[T]he motion is brought

8  in violation of [L.R.] 7-3 . . . [because] during the course of a three-minute telephone

9  conversation, Plaintiff's counsel discussed neither the substance of the . . . motion nor

10  any proposed resolution.  Thus, the motion is denied first for failure to comply with

11  Local Rule 7-3."); *Halicki v. Carroll Shelby Int'l, Inc.*, No. 04-8813, 2005 WL

12  5253338, at *20 (C.D. Cal. Nov. 14, 2005) (reversed on other grounds) (although

13  plaintiffs, as the moving party, met with defense counsel, "Plaintiffs' counsel allegedly

14  did not disclose the basis of the instant motion. . . . Because Plaintiffs have failed to

15  comply with Local Rule 7-3, the Court will not consider this Motion.  The Court finds

16  that Plaintiffs have engaged in a mere pro forma attempt to comply with Local Rule 7-

17  3, which the Court does not consider to be an earnest effort to bring about the goals of

18  the rule.");  *Figueroa v. Gates*, No. 00-4158, 2002 WL 31572968, at *1 (C.D. Cal.

19  Nov. 15, 2002) (stating that it was defense counsel's responsibility to ensure the parties

20  thoroughly discussed the motion).

21  B.    <u>Plaintiffs Seek Leave to Amend If Any Aspect of the Complaint is Deficient</u>

22        Defendants believe that plaintiffs' complaint should be dismissed in its entirety,

23  with prejudice.  Defendants' Proposed Order at 4:2-3.  Defendants' proposition is

24  ─────────────────

25  [5]    During the LR 7-3 call, plaintiffs' counsel offered to file an amended complaint

26  to address defendants' contention that plaintiffs brought the case "solely in the public
interest," which is a cherry-picked quote defendants took out-of-context from the

27  complaint.  Defendants' counsel downplayed the importance of the quote and said they
saw no need for amendment.  Ironically, the "solely for the public" issue now is

28  defendants' primary argument. *Id*. ¶ 4.

1   contrary to the liberal amendment policy contained in Fed. R. Civ. P. 15(a).  Rule 15

2   prescribes a liberal amendment policy, providing that leave to amend "shall be freely

3   given when justice so requires."  Fed. R. Civ. P. 15(a).  If this Court finds that

4   plaintiffs' complaint is factually deficient, plaintiffs should be afforded an opportunity

5   to amend in order to test their claims on the merits.  *McKinniss v. Sunny Delight*

6   *Beverages Co.*, No. CV 07-02034-RGK (JCx), 2007 WL 4766525, at *6 (C.D. Cal.

7   Sept. 4, 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiffs have not

8   amended their complaint before.  *See Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir.

9   1980) (providing that the district court's discretion to permit amendments is especially

10  broad where plaintiffs have already had an opportunity to amend a complaint).

11  Considering the violations of L.R. 7-3 prohibited plaintiffs from amending, and for the

12  reasons mentioned above and below, the Court should grant plaintiffs leave to amend

13  their complaint if deficiencies are identified.

14  C.      Facts Improperly Presented

15          Defendants open their brief by making a false claim that plaintiffs' cause is the

16  elimination of the use of elephants for entertainment.  Mtn. to Dismiss ("MTD") at 3:8-

17  9.  Defendants cite paragraphs 14-16, 19, 33, 53, and 73-74 of the complaint for

18  support of this "fact."  *Id*. at 3:15.  A review of these citations reveal that plaintiffs

19  never plead such a statement.  Defendants cursory and generalized claim is a deceptive

20  attempt to paint plaintiffs as extreme animal rights activists, which like most things

21  attached with an "extreme" label, carries negative connotations.  Defendants attempt to

22  take the spotlight away from their documented elephant abuse, and misstate the

23  "gravamen" of plaintiffs' complaint.  *See id*. at 3:19-22 ("The gravamen of Plaintiffs'

24  Complaint is that, even though Plaintiffs believe that elephants used for entertainment

25  are by definition abused, they went ahead and saw the Movie anyway . . . .").

26  Defendants' claim, therefore, rests on facts outside of the complaint.  The Court is

27  limited only to the face of the complaint, and may not look to facts outside of it.

28  *Morris*, 2011 WL 2729190, at *1 (citing *Arpin v. Santa Clara Valley Transp. Agency*,

1   261 F.3d 912, 925 (9th Cir. 2001)).

2          Defendants improperly conflate ADI and plaintiffs, and improperly portray

3   plaintiffs as owning and/or controlling ADI.  ADI is not a plaintiff in this case.  The

4   complaint does not allege that plaintiffs agree with ADI's goals.  There are no

5   allegations in the complaint that plaintiffs are owners, directors, founders, or otherwise

6   in control of ADI.  A court cannot assume that a member of an organization shares the

7   same goals as the organization, since "[a] number of complex motivations may impel

8   an individual to align himself with a particular organization."  *United States v. Robel*,

9   389 U.S. 258, 266 n.16 (1967).  Yet throughout defendants' brief, they use phrases

10  such as "Plaintiffs' ADI group," "their ADI group," and "their animal rights group."

11  MTD at 3:13-14, 4:5, 4:7, 11:10, 11:12.  ADI is only relevant to the facts in the

12  complaint because ADI uncovered defendants' elephant abuse.  Plaintiffs are

13  individuals who saw the videos.  Compl. ¶¶ 3-5.  The only fact that matters for

14  purposes of this motion is that defendants were caught on tape torturing elephants with

15  bull hooks and electric shock devices, actions that plaintiffs believe should cease.  *Id.*

16  ¶¶ 3-4, 5, 21-22.  Defendants must take these facts in the complaint as they find them.

17  Defendants cannot contort the facts to support their portrayal of plaintiffs as "extreme,"

18  or erroneously combine plaintiffs with ADI to falsify the "gravamen" of plaintiffs'

19  complaint.

20  D.   <u>Plaintiffs' Claims Are Properly Pled Because: (1) Plaintiffs Suffered Personal
21       Economic Loss, and (2) Plaintiffs Need Not Plead "Direct Business Dealings"
         With Defendants</u>

22       1.   *Plaintiffs Suffered Personal Economic Loss*

23          The UCL prohibits "any unlawful, unfair, or fraudulent business act or

24  practice."  Cal. Bus. & Prof. Code § 17200.  According to defendants, plaintiffs

25  brought suit "solely" on behalf of the public and therefore plaintiffs' claims are barred

26  by Proposition 64, which restricted suits based on Sections 17200 and 17535 only to

27  the California Attorney General and local public officials.  MTD at 5-6.  Defendants

28  also argue that a private party may *never* bring an action under the UCL.  *Id.* at 6:5-6.

1  Defendants are wrong and have deceptively selected out-of-context allegations in the

2  complaint to support a skewed interpretation.  *See S.E.C. v. Leslie*,  No. C 07–3444,

3  2008 WL 3876169, at *5 (N.D. Cal.  Aug. 19, 2008) (criticizing such deceptive

4  behavior: "[moving defendants] cherry-pick elements of the complaint and ignore

5  certain key allegations").

6          Private suits brought prior to Proposition 64 could be brought by "any person

7  acting for the interests of itself, its members or the general public . . . ."  *McKenzie v.*

8  *Fed. Exp. Corp.*, 765 F. Supp. 2d 1222, 1237 (C.D. Cal. 2011) (quoting *Kwikset Corp.*

9  *v. Super. Ct.*, 51 Cal.4th 310, 320 (2011).  Now, after Proposition 64, private suits

10  under the UCL are "limited to any 'person who has suffered injury in fact and has lost

11  money or property' as a result of unfair competition."  *Walker v. Geico Gen. Ins. Co.*,

12  558 F.3d 1025, 1027 (9th Cir. 2009) ("[T]he UCL in § 17204 now requires a plaintiff

13  to establish that it has 'suffered injury in fact and has lost money or property.'"); *see*

14  *Degelmann v. Advanced Med. Optics, Inc.*, -- F.3d ---, 2011 WL 4470641, at *2 (9th

15  Cir. Sept. 28, 2011).  Contrary to defendants' claim, Ninth Circuit and California case

16  law make clear that private suits are still permitted under the UCL.

17          The current version of Section 17204 also discredits defendants' argument.  The

18  last sentence of Section 17204 provides that a private action may be brought "by a

19  person who has suffered injury in fact and has lost money or property as a result of the

20  unfair competition."  Cal. Bus. & Prof. Code § 17204.  The UCL, therefore, provides a

21  private right of action only if plaintiffs have "suffered injury in fact and [have] lost

22  money or property as a result of the unfair competition."  *Id.*; *Clayworth v. Pfizer, Inc.*,

23  49 Cal.4th 758, 788 (2010).  Defendants have not challenged whether plaintiffs lack

24  such an injury, meaning any such argument is outside the scope of this motion.

25  Instead, defendants' argument is based only on their incorrect belief that the UCL no

26  longer permits private actions except for those cases meeting the procedural

27  requirements for a class action.  Defendants have not cited one federal or state case so

28

1  limiting the UCL.[6]  Even if defendants argued that plaintiffs lack an injury, it would

2  not stand because plaintiffs plead that they suffered injury in fact and have lost money

3  or property as a result of defendants' unfair competition.  Compl. ¶ 63; *see Kwikset*, 51

4  Cal.4th at 323 ("lost money or property – economic injury – is itself a classic form of

5  injury in fact.")  While Proposition 64 has narrowed the UCL, even a cursory review of

6  the case law and statute reveal that private suits are available.

7      2.    *Direct Business Dealings Are Not Required and Restitution is Permitted*

8          Defendants aver that plaintiffs' suit and their claim for restitution are improper

9  because plaintiffs did not directly use defendants' goods or services by "renting" one

10  of defendants' elephants.  MTD at 5:18-19, 7:3-9, 9:2-3, 10:5-6.  Defendants'

11  argument is unavailing.

12          a.    The UCL Does Not Require Direct Business Dealings

13          One purpose of Proposition 64 was to eliminate suits filed "for clients who have

14  not used the defendant's product or service, viewed the defendant's advertising, or had

15  any other business dealing with the defendant."  Cal. Prop. 64 § (*l*)(b)(3).  Proposition

16  64 did not add a "business dealings requirement" to Section 17204, nor does the statute

17  mandate a "business dealings" requirement.  *Allergan, Inc. v. Athena Cosmetics, Inc.*,

18  640 F.3d 1377, 1381 (Fed. Cir. 2011); Cal. Bus. & Prof. Code § 17204.  While a

19  "direct business dealing" is certainly one way in which a plaintiff could be harmed,

20  California courts have recognized claims where a direct business dealing was lacking.

21  *See, e.g., Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 716

22  (2007); *see also Clayworth*, 49 Cal.4th at 788 ("Pharmacies acted as retailers for

23  Manufacturers' drugs and thus had indirect business dealings with Manufacturers.");

24  *Shersher v. Super. Ct.*, 154 Cal.App.4th 1491, 1499-1500 (2007) (indirect purchases

25  [6]      Why defendants failed to bring controlling case law to the Court's attention is

26  troubling, and so is the fact that defendants conveniently omitted the last sentence of

27  Section 17204 in order to bolster their erroneous argument.  Defendants' argument

28  has no basis in law, which makes the purpose of this portion of defendants' motion
questionable and brought potentially as a way to harass plaintiffs.

supported claim).  The only requirements to bring a claim are that a plaintiff must have "suffered injury in fact and . . . lost money or property as a result of such unfair competition."  *Kwikset*, 51 Cal.4th 310; *see Hall v. Time Inc.*, 158 Cal.App.4th 847, 854 (2008) (Section 17204 standard is satisfied when plaintiff has "expended money due to the defendant's acts of unfair competition"); *see also Clayworth*, 49 Cal.4th 758; Cal. Prop. 64 § 3; *Allergan*, 640 F.3d at 1381.

Here, plaintiffs allege an economic injury resulting from defendants' unfair business practices.  The unfair competition that plaintiffs allege involves seeing defendants' misrepresentations on HTWT's website, in the news, on the Internet, and in movies that touted the safe treatment of their elephants.  Compl. ¶¶ 31-32, 34, 75, 77.  As a result of defendants' lies, and plaintiffs' reliance on those lies, plaintiffs lost money and property.  *Id.* ¶ 63.  Plaintiffs' complaint sufficiently alleges an injury caused by defendants' unfair business practices.

"Although 'California still requires that the defendant have benefitted from the actions that resulted in an economic loss to plaintiff, . . . direct payment from plaintiff to defendant is not necessary to state a claim of false advertising or unlawful practices under the UCL."  *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, No. 2:09-cv-02067-MCE-GGH, 2010 WL 1611398, at *3 (E.D. Cal. Apr. 20, 2010) (quoting *ZL Technologies, Inc. v. Gartner, Inc.*, No. CV 09-02393 JF (RS), 2009 WL 3706821, at *10 (N.D. Cal. Nov. 4, 2009); *Degelmann*, 2011 WL 4470641, at *2 (consumers who purchase falsely advertised products have demonstrated Article III standing to satisfy the elements of a UCL and FAL claim).  In *VP Racing Fuels*, 2010 WL 1611398, at *2, defendant was a distributor of fuel.  Plaintiffs purchased defendant's fuel from third party locations.  *Id.*  The court determined that plaintiffs sufficiently alleged that the fuel it purchased benefited defendant, even though there was no evidence that money was paid directly from plaintiffs to defendant.  *Id.* at *3.  For pleading purposes, this was appropriate since a reasonable inference could be drawn that defendant benefitted from plaintiffs' purchase of fuel.  *Id.*; *see Shersher*, 154 Cal.App.4th at 1499-

EVANS & PAGE
SAN FRANCISCO

1    1500(finding that defendant Microsoft benefitted from plaintiff's purchase of

2    Microsoft products even though plaintiff purchased them from third party dealers).

3         In this case, defendants benefited from plaintiffs' economic loss even though

4    plaintiffs did not pay defendants directly.  Defendants lie to the public in advertising

5    and promotions in an overall scheme to deceive the public into believing that their

6    elephants are humanely treated.  This scheme is their business model – if people

7    believe that defendants' elephants are trained on jelly beans and marshmallows, then

8    people will see movies that showcase elephants, thereby allowing defendants to receive

9    more business from the movie industry.  Compl. ¶¶19, 20.  Defendants' whole business

10   model is to sell the idea of humane treatment.  The better the movies do, the more

11   movies will feature defendants' elephants, and the higher defendants can set their

12   prices as the number one supplier of elephants for movies.  *See id*. ¶ 17 (defendants

13   "take credit for most of the Asian elephant work currently seen in North American

14   television and movies").  Accordingly, a reasonable inference can be drawn that

15   defendants benefited from plaintiffs' purchase of movie tickets featuring defendants'

16   elephant.  *See Troyk v. Farmers Group, Inc.*, 171 Cal.App.4th 1305, 1340 (2009)

17   (holding that although plaintiffs did not pay the service charges directly to defendants,

18   the trial court could have properly inferred from the undisputed facts that defendants

19   received a benefit from those service charge payments).

20              b.    Plaintiffs Are Entitled to Restitution

21         Defendants contend that plaintiffs are not entitled to restitution because

22   plaintiffs had no direct business dealings by not "renting" an elephant.  MTD at 9:2-3,

23   10:5-6.  As already noted, business dealings are not required to maintain a claim.  *See*,

24   *e.g.*, *Clayworth*, 49 Cal.4th at 788; Cal. Bus. & Prof. Code § 17204 ("[A]ctions for

25   relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered

26   injury in fact and has lost money or property as a result of the unfair competition.").  In

27   any event, as noted above, plaintiffs plead an injury that could be compensated by

28   restitution to satisfy the pleading requirements.

A party found to have violated the UCL may be required to "restore to a person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. § 17203. Thus, restitution is available to injured parties who lost money or property (as pled by plaintiffs) and was the result of defendants' unfair business practices and false advertising. Compl. ¶¶ 3-4, 63, 80, 88; *id.* at 21:5-6, 21:12. Section 17204 does not mandate a "business dealings requirement," as defendants argue. Section 17204 only requires that a party allege an injury of "lost money or property" that was caused by defendants. For purposes of this motion, plaintiffs allege facts that entitle them to restitutionary relief. The Court need not reach the issue of whether plaintiffs plead an injury that ultimately could be compensated by restitution. *See Clayworth*, 49 Cal.4th at 788-90.

### 3.    The False Advertising Claim Is Pled Sufficiently

Defendants' motion, and all of its arguments, mesh plaintiffs' unfair business practices claim with the false advertising claim. Defendants never independently attack the validity of the FAL claim. An undeveloped and perfunctory argument of this sort is waived. *See, e.g.*, *John-Charles v. California*, -- F.3d --, 2011 WL 2937945, at *3 n.4 (9th Cir. July 22, 2011) (citing *Martinez–Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996)); *Rimes v. Noteware Dev. LLC*, No. C-09-0281 EMC, 2010 WL 1644693, at *2 (N.D. Cal. Apr. 21, 2010) (holding arguments waived in a motion to dismiss that were wholly conclusory, averred in a perfunctory manner, and unaccompanied by some effort at developed argument). Both claims are distinct with separate requirements.

In the event that defendants' unclear and hidden FAL arguments are not waived, "to state a claim under either UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *VP Racing Fuels*, 2010 WL 1611398, at *5 (quotations omitted). Plaintiffs must only allege that: (1) statements made in advertising are untrue or misleading; and (2) defendants knew, or by the exercise of

1   reasonable care should have known, that such statements were untrue or misleading.

2   *Id.* (citing *People v. Lynam*, 253 Cal.App.2d 959, 965, (1967)).

3   In this case, plaintiffs allege that they, and members of the consuming public,

4   are likely to be deceived or misled by defendants' statements regarding humane

5   treatment of their elephants.  Compl. ¶¶ 49, 85, 84.  These statements are untrue and

6   misleading, and plaintiffs were deceived.  *Id.* ¶¶ 55, 58, 64, 84.  These specific

7   allegations satisfy the pleading requirements for this claim.

8   E.   Plaintiffs are Entitled to Their Claims for Relief

9        *1.   Plaintiffs Face Future Harm Warranting Injunctive Relief*

10       Defendants argue that plaintiffs lack standing to seek injunctive relief because

11  they are not threatened by any future injury.  *Id.* at 10:18-19.  Defendants allege that

12  plaintiffs are now knowledgeable about defendants' training methods and that such

13  knowledge precludes them from showing future harm, and thus bars injunctive relief.

14   Defendants' argument is essentially: "plaintiffs know we abuse elephants, and now

15  that they know the elephants are tortured, plaintiffs cannot be harmed in the future by

16  seeing movies with elephants (since plaintiffs can choose not to go see such movies)."

17  Defendants' position is belied by the actual averments in the complaint.  The complaint

18  averments demonstrate that defendants are denying the contents of ADI's video as

19  highly staged and that defendants have never, and will never, abuse their elephants.

20  *See* Compl. ¶ 44(a) ("They have an agenda and a history of using less than honest

21  means to achieve their goals."); *id.* ¶ 44(d) (the activists "cut the film to take

22  everything out of context and make it look far worse. . . . [The video] is selectively

23  edited and out of order. . . . They take things out of context and edit it."); *id.* ¶¶ 44(c),

24  45 ("Having seen the video, I can tell you that it is an inaccurate portrayal of our

25  elephant training practices."; *id.* ¶ 45 (the video was "selectively edited and altered to

26  intentionally present [defendants] in a negative light.").

27       Defendants' argument, therefore, is made in bad faith as it contradicts the

28  complaints' factual recitation: defendants claim repeatedly that they did not engage in

the conduct depicted in the video, and that "it is an inaccurate portrayal of [defendants'] training practices."  Plaintiffs want to see movies featuring elephants that are not abused.  Compl. ¶¶ 3-4, 54, 64, 66.  But plaintiffs are not sure whether the movies will actually contain non-abused elephants based on defendants' comments to the media.  *Id.* ¶¶ 54, 64, 66.  Plaintiffs will be harmed in the future by not knowing what movies, and/or television shows, feature humanely trained versus abused elephants.  *See id.* ¶ 54, 64, 66, 87.  Plaintiffs will be harmed in the future by not being able to see movies with such elephants, or ever partake in an elephant ride.  *See id.*

Moreover, the complaint never alleges that plaintiffs will forever distrust defendants, and forever avoid seeing movies with elephants.  To the contrary, plaintiffs are concerned that since defendants are a major supplier of elephants to the movie industry, *id.* ¶¶ 16, 17, 19, that plaintiffs will be deceived in the future when defendants lie about training practices and plaintiffs rely on those statements.  *Id.* ¶ 87.[7]  Clearly, plaintiffs want to watch elephants in movies in the future.

Thus, plaintiffs are being restricted from watching any movies and television that include depictions of elephants because defendants – "who can take credit for most of the Asian elephant work currently seen in North American television and movies" – are able to abuse elephants and lie to the public about it. *Id.* ¶ 17.  Because defendants still are denying all the abuse in the videos, plaintiffs are unable to determine whether the videos are accurate, or whether defendants' statements are accurate.  If the videos depicting abuse are in fact edited to inaccurately portray abuse, then plaintiffs did not lose money and can go see *Zookeeper* and other future movies involving elephants, or even rent past movies featuring defendants' elephants such as *Dumbo Drop*, *Ace Ventura When Nature Calls*, *Jungle Book*, *Larger Than Life*, *Bruce Almighty*, and

---

[7]     "Plaintiffs seek injunctive relief under California's Business and Professions Code § 17535 as the objectionable conduct is likely to occur again in the future. Defendants will continue to advertise and misrepresent the aforementioned facts thereby increasing defendants' revenue at the *expense of plaintiffs* and the general public." (emphasis added).

1  *George of the Jungle.  Id.* ¶ 16.  However, if the videos are accurate, then defendants

2  duped plaintiffs into spending money for tickets by lying to them.  The cases

3  defendants rely upon for precluding a plaintiff's injunctive relief, involved undisputed

4  factual conduct by defendants, and thus are inapplicable.

5  If this Court grants an injunction against defendants' use of electricity to train

6  elephants, and also enjoins defendants from stating that they "humanely train"

7  elephants when they use electric prods and bull hooks, then plaintiffs will be able to

8  watch movies and television shows featuring elephants.  If such relief is granted,

9  plaintiffs will no longer be afraid that they are supporting defendants' abuse.  In

10 addition, when plaintiffs research humane treatment in the future, they will know that

11 if defendants are saying they humanely train animals, then it does not involve electric

12 prods and bull hooks.[8]  These factual allegations are sufficient to overcome a motion to

13 dismiss.  *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) ("At the pleading

14 stage, general factual allegations of injury resulting from the defendant's conduct may

15 suffice.")

16     2.   *Plaintiffs Gave Fair Notice of Declaratory Relief*

17 Defendants maintain that plaintiffs' claim for declaratory relief fails as a matter

18 of law because plaintiffs fail to place defendants on fair notice of the specific request.[9]

19 MTD at 12:16-17.  Defendants disregard the applicable Rule 8 pleading standards and

20 conveniently ignore the multitude of well-pleaded allegations in the complaint that the

21 abuse and torture of their elephants must cease.  Plaintiffs' claim for declaratory relief

22 is not based on conclusory allegations, but rather, plaintiffs have pled a claim for

23 declaratory relief with enough facts to state a claim for relief that is plausible on its

24

25  [8]   Similarly, plaintiffs will suffer future injury since they will not be able to attend
26 county fairs or ride elephants in the future.  Plaintiffs are unsure whether such elephants
    are treated humanely based on defendants' comments.  Compl. ¶ 15.

27  [9]   Defendants also argue that plaintiffs' claim for declaratory relief fails because
28 plaintiffs lack no threat of future injury.  This is the same argument raised against
    plaintiffs' proffered injunctive relief, which fails for the same reasons detailed above.

1   face.  *See The 1849 Condos. Ass'n, Inc. v. Bruner*, No. 2:09-cv-03339-JAM-EFB, 2010

2   WL 2557711, at *3 (E.D. Cal. June 21, 2010).  Plaintiffs provide the factual basis for

3   declaratory relief, which is set out in sufficient detail throughout the complaint to give

4   defendants fair notice of the basis for the relief sought.  Defendants, therefore, have the

5   specific facts necessary to provide an adequate reply.  *See Zopatti v. Rancho Dorado*

6   *Homeowners Ass'n*, No. 10CV1091 DMS (WVG), 2010 WL 5174534, at *8 (S.D. Cal.

7   Dec. 15, 2010) (stating that notice was sufficient for declaratory relief based on

8   previously pled facts).

9        Defendants further assert that the declaratory relief fails because plaintiffs did

10   not provide a specific declaration for declaratory relief. MTD at 13:1-3.  Besides not

11   citing any authority requiring such a specific declaration, defendants' claim is too

12   intertwined, buried, and veiled by their fair notice pleading argument to answer

13   sufficiently.  *Id*. at 12:16-17.  The argument should be deemed waived.  *See Khademi*

14   *v. S. Orange County Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002)

15   (judges should not have to hunt through buried arguments in briefs); *id*. (quoting

16   *Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill.

17   2001) ("A judge is the impartial umpire of legal battles, not a [party's] attorney. . . .

18   [T]o the extent that [Defendant] failed to develop any additional argument[s] or

19   provide any legal support for them, [it] has waived them.").

20        The relief requested is permitted, and nothing defendants argue would restrict

21   such a claim with prejudice.  If the relief requested is found deficient, plaintiffs should

22   be given the opportunity to correct any deficiency.  Plaintiffs have no interest in

23   wasting the Court's time and will gladly amend if the court finds it necessary – and

24   would have offered the same had defendants raised the issue in the meet and confer

25   efforts. [10]

26

27   [10]     Defendants also assert that compensatory damages are not available under the
     UCL or the FAL.  MTD at 8.  Damages are available for common law unfair
28   competition.  *Bank of the West v. Super. Ct.*, 2 Cal.4th 1254, 1265 (1992).  However,

F.      **Plaintiffs' Complaint Meets the Requirements of Fed. R. Civ. P. 9(b)**

      1.      *Plaintiffs Plead the Who, What, When, Where, and How of the Fraudulent Conduct*

Defendants contend that plaintiffs' claims fail under Fed. R. Civ. P. 9(b) by failing to identify when statements were made, where they were made, and how they were false.[11]  MTD at 2:6-9, 13:11-12.  Under Rule 9(b), all "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted).  The case, *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) provides a good example of a court's broad-stroke analysis for analyzing whether a plaintiff met the what, who, when, where, and how requirements of Rule 9(b)).

Plaintiffs read defendants' claims of humane elephant training before seeing the movie *Water for Elephants.*  Compl. ¶¶ 3-4.  In particular, plaintiffs plead in their complaint the following: (1) HTWT's website declared a "high standard of care and humane treatment"; (2) Gary Johnson declared "Tai was never hit in any way at all"; (3) Kari Johnson publicly stated that when Tai was on the set for the movie, he received the same treatment as he did at the HTWT compound; (4) Kari Johnson declared that defendants built a "good reputation" based on the "special care" given to

---

because plaintiffs are seeking restitution under their statutory claims, they do not oppose dismissing the claim for compensatory damages.  Defendants further contend that nonresitutionary disgorgement of profits is not available.  Disgorgement of profits is allowed in UCL claims only to the extent it constitutes restitution, i.e., profits unfairly obtained.  *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1102 (N.D. Cal. 2007).  Since defendants' motion is limited to nonrestitutionary disgorgement, plaintiffs do not oppose.

[11]      Defendants' entire argument is premised on the alleged fact that all of plaintiffs' claims are grounded in fraud.  For purposes of this motion, plaintiffs will advance on the proposition that the entire twenty-one page complaint is one giant fraud claim.  Plaintiffs, however, do not waive the right to raise future arguments against the over-inclusive application of the heightened pleading standard.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard).

1  the elephants; and (5) Kari Johnson championed that HTWT does not condone using

2  electrical devices to discipline and control elephants. *Id.* ¶¶ 31-32, 34, 75; *see id.* ¶¶

3  70-71, 77, 84-85.

4         Plaintiffs satisfy the "who" component because for every statement they state

5  "who" said it.  The "what" is covered because plaintiffs actually describe the exact

6  content of the statement.  The "when" is met since plaintiffs plead that these statements

7  happened before they saw the movie.  The "where" and "how" are satisfied when

8  plaintiffs allege seeing defendants' misrepresentations on HTWT's website, in the

9  news, on the Internet, and in movies that touted the safe treatment of the elephants.  *Id.*

10  ¶¶ 31-32, 34, 75, 77.  With so much particularity pled and with every inference (and

11  benefit of the doubt) going to the non-moving party in a motion to dismiss, the Court

12  should read the complaint as meeting Rule 9(b)'s requirements.  *See id.* ¶¶ 3-4, 64, 67,

13  70-72, 77, 84-85 (listing the specific statements which are described in more detail

14  earlier in the complaint)[12]; *Peviani*, 774 F. Supp. 2d at 1071; *In Re Tobacco II Cases*,

15  46 Cal.4th 298, 312 (2009) (holding that when the unfair practice is a fraudulent

16  advertising campaign, a plaintiff need not plead or prove "an unrealistic degree of

17  specificity").

18         2.     *Plaintiffs Plead Reliance on Defendants Statements*

19         Defendants argue that plaintiffs do not plead reliance.  MTD at 14:10-11.

20  Defendants' argument is merely a conclusory sentence followed by a patchwork of

21  string citations.  As noted above, an undeveloped and perfunctory argument of this sort

22  is waived.  *See, e.g.*, *John-Charles*, -- F.3d --, 2011 WL 2937945, at *3 n.4 (citing

23  *Martinez–Serrano*, 94 F.3d at 1259; *Rimes*, 2010 WL 1644693, at *2 (holding wholly

---

24  [12]     Defendants strangely rely on ¶¶ 43-45 of the complaint as proof that plaintiffs
25  did not meet Rule 9(b) requirements.  As these paragraphs clearly are inapplicable to the
    issue at hand, defendants' citation is disingenuous, as there are a plethora of paragraphs
26  cited above showcasing defendants' fraudulent conduct.  Paragraphs 43-45 demonstrate
27  that defendants still are maintaining to the public that they do not torture their elephants,
    and are disparaging ADI's reputation in the media.  *See* Compl. ¶¶ 43-45.
28

conclusory and perfunctory arguments waived if unaccompanied by some effort at developed argument); *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. C 09–03529 JSW, 2011 WL 1152568, at *10 (N.D. Cal. Mar. 28, 2011) (finding the arguments in the moving papers wholly perfunctory and without discernable benefit to the Court).

Even if defendants' one sentence, perfunctory argument is not deemed waived, plaintiffs repeatedly allege that defendants' statements were material to them and had they known that the elephants were abused they never would have gone to see the movie and thereby support defendants.  Compl. ¶¶ 3-4, 72-73, 77.  Significantly, plaintiffs claim that defendants were aware of the misrepresentations, but did nothing to counter the statements, and even endorsed them.  *Id*. ¶¶ 70, 74.  Plaintiffs' allegations meet the requirements of reliance under Rule 9(b).

## V.    CONCLUSION

Accordingly, the Court should deny defendants motion to dismiss.  On a motion to dismiss, all reasonable inferences are to be drawn in favor of the non-moving party. Plaintiffs have pled valid claims under the California Business & Professions Code. The Court also should deny defendants' arguments that the relief requested is improper.

Dated: October 3, 2011                    By: /s/ Corey Evans
                                               Corey Evans
                                               Attorney for Plaintiffs

/
/
/
/
/
/
/////

## <u>CERTIFICATE OF SERVICE CM/ECF</u>

I hereby certify under penalty of perjury that on October 3, 2011, I electronically filed the foregoing document entitled OPPOSITION TO DEFENDANTS' MOTION TO DISMISS with the Clerk of the United States District Court, Central District of California, by using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the United States District Court Southern District's CM/ECF System.

Dated: October 3, 2011                    /s/ Corey Evans
                                          Corey A. Evans
                                          Attorney for Plaintiffs